UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER BLAIR,

      Plaintiff,

vs.           Case No. 2:08-cv-728-FtM-29DNF

BIJOU RAZILOU, individually, and
CITY of NAPLES, a Florida municipal
corporation

      Defendant,
_____

**OPINION AND ORDER**

   This matter comes before the Court on Defendants' Motion for Summary Judgment and Combined Memorandum of Law (Doc. #25) filed on November 2, 2009. Plaintiff filed her Response (Doc. #36) on December 5, 2009. Defendants were granted leave and filed a Reply (Doc. #41) on December 23, 2009. The parties also filed affidavits, depositions, and other exhibits in support of their respective briefs.

**I.**

  Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the

outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). The Court does not, however, weigh conflicting evidence or make credibility determinations. Hilburn, 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)). Conclusory

allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).

**II.**

Plaintiff Jennifer Blair (plaintiff or Blair) filed a four-count First Amended Complaint (Doc. #16) against Bijan Razilou (Officer Razilou) and the City of Naples regarding her involuntary civil commitment pursuant to Florida Statute § 397.672, the "Hal S. Marchman Alcohol and Other Drug Services Act of 1993" (Marchman Act). Count I alleges that Officer Razilou violated plaintiff's clearly established Fourth and Fourteenth amendment right to be free from involuntary commitment in violation of 42 U.S.C. § 1983. Count II alleges that Officer Razilou was acting under the direction and control of the City of Naples' police department, and pursuant to police department official policy, the City of Naples failed to direct its agents, employees, and servants, including Officer Razilou, that it was unlawful to subject a person to involuntary civil commitment unless there was probable cause that the person met all of the requirements of the Marchman Act. Thus, the City of Naples approved the unlawful and deliberately indifferent conduct of Officer Razilou in violation of plaintiff's Fourth and Fourteenth Amendment rights. Count III and Count IV allege claims against the City of Naples, and Officer Razilou, respectively, for false arrest/false imprisonment under Florida state law.

The First Amended Complaint (Doc. #16) alleges the following relevant background facts: On May 17, 2008, plaintiff was visiting her husband, Michael Blair, in Naples for his birthday weekend while he was there on business. On the evening of May 17, 2008, Plaintiff and her husband dined at an Italian restaurant in Naples were they shared a bottle of wine with dinner. Following dinner, plaintiff and her husband went to another Naples establishment where plaintiff consumed at least two more drinks. Plaintiff and her husband then went to a third Naples establishment where plaintiff consumed a beer. Plaintiff admits that she was intoxicated that evening.

Plaintiff and her husband then tried to check into an adjacent hotel, but there was no vacancy, so they got in their car, with plaintiff's husband driving, and continued on towards a nearby hotel. On the way to the hotel, Michael Blair was pulled over by City of Naples police officer Matthew Doyle. After completing several roadside sobriety tests, Michael Blair was placed under arrest for DUI.

Following Michael Blair's arrest, Plaintiff was asked whether anyone could provide her a ride. Plaintiff told the officers that she had an aunt who lived in North Fort Myers. After several unsuccessful attempts, plaintiff reached her aunt and told her that plaintiff's husband had been arrested for DUI and that she needed a ride. Plaintiff handed her cell phone to Defendant Razilou so that he could give her aunt directions. Plaintiff's aunt advised

Razilou that she was approximately forty minutes away. Razilou advised that he could not wait that long. Razilou then handcuffed plaintiff and transported her to the Collier County Jail for involuntary civil commitment pursuant to the Marchman Act.

**III.**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under 42 U.S.C. § 1983, plaintiff must prove that (1) defendant deprived her of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, plaintiff must establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

In the defendants' summary judgment motion, Officer Razilou raises the defense of qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

-5-

would have known." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1305 (11th Cir. 2009) (internal citations and quotation omitted). The standard for qualified immunity is well established. First, the government official must show that he was engaged in a "discretionary function" when he committed the allegedly unlawful acts. If the official acted within his or her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. To do this plaintiff must show: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation. See Corey Airport Servs., Inc. v. Decosta, 587 F.3d 1280, 1285 (11th Cir. 2009); Mann, 588 F.3d at 1305.

The parties do not dispute that Officer Razilou was acting within his discretionary authority. Thus the Court need consider only whether Blair has met her burden to show that qualified immunity is not appropriate.

The first inquiry is to determine whether Plaintiff has sufficiently established a constitutional violation. "Without a . . . violation, there can be no violation of a clearly established right." Smith v. Siegelman, 322 F.3d 1290, 1295 (11th Cir. 2003). In the instant case, Blair alleges that Officer Razilou unlawfully civilly committed her pursuant to the Marchman Act without probable cause in violation of her Fourth and Fourteenth Amendment rights to be free from unlawful search and seizure. Both parties agree that

plaintiff's civil commitment, while not an arrest, was a seizure under the Fourth Amendment.

The Fourth Amendment, as applied to the state by and through the Fourteenth Amendment, provides a right to be secure against unreasonable searches and seizures. U.S. CONST. amend. IV; Hardy v. Broward County Sheriff's Office, 238 Fed. Appx. 435, 440 (11th Cir. 2007). "While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity. We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007). In the context of a claim of false arrest or detention, an officer is entitled to qualified immunity if he or she had "arguable probable cause," which the Eleventh Circuit has defined as situations where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest" the plaintiff. Skop, 485 F.3d at 1137; Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006). Arguable probable cause depends on the elements of a Marchman Act commitment and operative facts of the particular case. Skop, 485 F.3d at 1137-38.

Plaintiff was civilly committed pursuant to the Marchman Act. The Marchman Act provides that:

> A person meets the criteria for involuntary admission if there is good faith reason to believe the person is substance abuse impaired and, because of such impairment:
>
> (1) Has lost the power of self-control with respect to substance use; and either
>
> (2)(a) Has inflicted, or threatened or attempted to inflict, or unless admitted is likely to inflict, physical harm on himself or herself or another; or
>
> (b) Is in need of substance abuse services and, by reason of substance abuse impairment, his or her judgment has been so impaired that the person is incapable of appreciating his or her need for such services and of making a rational decision in regard thereto; however, mere refusal to receive such services does not constitute evidence of lack of judgment with respect to his or her need for such services.

FL. ST. § 397.675. Section 397.311(16), Florida Statutes, defines "impaired" or "substance abuse impaired" as "a condition involving the use of alcoholic beverages or any psychoactive or mood-altering substance in such a manner as to induce mental, emotional, or physical problems and cause socially dysfunctional behavior."

Florida law provides that "[a] law enforcement officer may implement protective custody measures as specified in this part [Marchman Act] when a minor or an adult who appears to meet the involuntary admission criteria in s. 397.675 is: (1) Brought to the attention of law enforcement; or (2) In a public place." Id. at § 397.677. Such a person "may consent to be assisted by a law enforcement officer to his or her home, to a hospital, or to a licensed detoxification or addictions receiving facility, whichever

the officer determines is most appropriate." Id. at § 397.6771. If such a person:

> fails or refuses to consent to assistance and a law enforcement officer has determined that a hospital or a licensed detoxification or addictions receiving facility is the most appropriate place for the person, the officer may, after giving due consideration to the expressed wishes of the person:
> (a) Take the person to a hospital or to a licensed detoxification or addictions receiving facility against the person's will but without using unreasonable force; or
> (b) In the case of an adult, detain the person for his or her own protection in any municipal or county jail or other appropriate detention facility.

Id. at § 397.6772. That statute further provides that "[s]uch detention is not to be considered an arrest for any purpose, and no entry or other record may be made to indicate that the person has been detained or charged with any crime. Id. at § 397.6772. A person in protective custody "must be released by a qualified professional when: (a) The individual no longer meets the involuntary admission criteria in s. 397.675(1); (b) The 72-hour period has elapsed; or (c) The individual has consented to remain voluntarily at the licensed service provider." FL. ST. § 397.6773. Finally, Florida law provides that "[a] law enforcement officer acting in good faith pursuant to this part may not be held criminally or civilly liable for false imprisonment." Id. at § 397.6775.

Viewed in the light most favorable to plaintiff, the material facts known to Officer Razilou were: (1) Blair's husband had just

been arrested for DUI (Doc. #35, p. 7); (2) Blair was groggy when Officer Razilou first approached her car window (id., at p. 11); (3) Blair admitted that she had been drinking that evening and was "tipsy" or "drunk" (id.); (4) Blair had to steady herself on the car door to stand (id., at p. 8); (5) Blair was crying and upset (id., at p. 10-11); (6) Blair may have been slurring (id., at p. 11); (7) Blair's aunt could not pick her up for at least forty minutes (id., at p. 9); (8) Officer Razilou, as well as other officers at the scene, expressed concern that Blair may stumble into the road and get hit by a car. (Id.)

The Court finds that the facts known to Officer Razilou at the time of Blair's civil commitment provide at least arguable probable cause to civilly commit plaintiff pursuant to the Marchman Act. A reasonable officer in the same circumstances and possessing the same knowledge could have believed that plaintiff met the requirements of the Marchman Act. It was clear that Blair was intoxicated, and unless committed was likely to inflict physical harm on herself or others if Officer Razilou was to leave her on the side of an unfamiliar, six-lane highway, while she waited for a ride. Because the Court finds that Officer Razilou had arguable probable cause to civilly commit Blair, Officer Razilou is entitled to qualified immunity as to Count I.

## IV.

Since the Court has determined that the civil commitment was constitutionally permissible, there can be no policy or custom that

officially sanctioned or ordered a constitutional violation. McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 n.13 (11th Cir. 2003); Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996); Vineyard v. County of Murray, 990 F.2d 1207, 1211 (11th Cir. 1993). Therefore, the City of Naples is entitled to summary judgment as to Count II.

**V.**

Since judgment is being entered on the only federal claims, the Court must decide whether to retain jurisdiction over the state law claims alleged in the other counts. Exercising its discretion under 28 U.S.C. § 1367(c), the Court declines to retain jurisdiction over these state claims. There are uniquely state law issues which relate to these state law claims, and plaintiff will suffer no prejudice if the Court declines to retain jurisdiction.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion for Summary Judgment and Combined Memorandum of Law (Doc. #25) as to Counts I and II are **GRANTED.**

2. The Clerk of the Court shall enter judgment in favor of the defendants Bijan Razilou and the City of Naples as to Counts I and II; and dismissing Counts III and IV for lack of jurisdiction pursuant to 28 U.S.C. § 1367(c).

3. The Clerk is further directed to terminate all deadlines as moot and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __16th__ day of February 2010.

*[signature: John E. Steele]*
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record